IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES KEVIN WROE,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>RICK HILL,<br><br>　　　　　Respondent. | No. 2:21-CV-0413-DJC-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

　　　　　Petitioner, a state prisoner proceeding with retained counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 17, and Petitioner's traverse, ECF No. 21.

　　　　　Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  Under AEDPA, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in

/ / /

/ / /

/ / /

1

1  state court proceedings unless the state court's adjudication of the claim:

2        (1) resulted in a decision that was contrary to, or involved an unreasonable
3        application of, clearly established Federal law, as determined by the
      Supreme Court of the United States; or

4        (2) resulted in a decision that was based on an unreasonable determination
5        of the facts in light of the evidence presented in the State court proceeding.

6  Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

7  "contrary to" or represents an "unreasonable application of" clearly established law. Under both

8  standards, "clearly established law" means those holdings of the United States Supreme Court as

9  of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006)

10  (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the

11  holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc).

12  Supreme Court precedent is not clearly established law, and therefore federal habeas relief is

13  unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54

14  (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal

15  law to be clearly established, the Supreme Court must provide a "categorical answer" to the

16  question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state

17  court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

18  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

19  created by state conduct at trial because the Court had never applied the test to spectators'

20  conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's

21  holdings. See Carey, 549 U.S. at 74.

22        In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

23  majority of the Court), the United States Supreme Court explained these different standards. A

24  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

25  the Supreme Court on the same question of law, or if the state court decides the case differently

26  than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state

27  court decision is also "contrary to" established law if it applies a rule which contradicts the

28  governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate

1  that Supreme Court precedent requires a contrary outcome because the state court applied the
2  wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court
3  cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at
4  406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine
5  first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6
6  (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal
7  habeas relief is warranted. See id. If the error was not structural, the final question is whether the
8  error had a substantial and injurious effect on the verdict, or was harmless. See id.

9        State court decisions are reviewed under the far more deferential "unreasonable
10 application of" standard where it identifies the correct legal rule from Supreme Court cases, but
11 unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S.
12 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested
13 that federal habeas relief may be available under this standard where the state court either
14 unreasonably extends a legal principle to a new context where it should not apply, or
15 unreasonably refuses to extend that principle to a new context where it should apply. See
16 Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court
17 decision is not an "unreasonable application of" controlling law simply because it is an erroneous
18 or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63,
19 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even
20 where the federal habeas court concludes that the state court decision is clearly erroneous. See
21 Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper
22 deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75.
23 As with state court decisions which are "contrary to" established federal law, where a state court
24 decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless
25 unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.
26 / / /
27 / / /
28 / / /

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

## I. BACKGROUND

**A.     Facts**[1]

The facts of this case are recited in the California Court of Appeal's decision on direct review in People v. Wroe, 2019 WL 4316474. See ECF No. 16-13. The state court recited the following facts, and Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Our description is limited to that necessary to discuss defendant's issues on appeal. What follows sets out the numerous trial date continuances granted in this case over a course of years to illustrate the context within which defendant was seeking yet another delay. Many of these facts were omitted from defendant's appellate briefing.
>
> The July 28, 2015, information charged defendant with torture, assault with a deadly weapon, infliction of injury on a cohabitant, false imprisonment, criminal threats and domestic violence. It also alleged the following enhancements: (1) great bodily injury involving domestic violence for inflicting injury on a cohabitant; (2) personal use of a deadly weapon for the same charge; and (3) a prior strike conviction and a prior serious felony conviction. Defendant pled not guilty and denied the enhancements.

///

---

[1]     Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

Defendant's jury trial was first set for February 22, 2016. On December 17, 2015, defendant's retained attorney (Danny Brace) filed a motion to withdraw, asserting an interpersonal conflict with defendant and that defendant could not afford to fund his defense. Relying on defendant's stated intention to hire a new private attorney and request that a public defender not be appointed, the court ordered Brace to remain on the case until a new attorney was retained.

The court relieved Brace on January 8, 2016, when defendant retained his second private counsel, William Wright. The jury trial was continued to March 7, 2016. On March 4, 2016, defendant's jury trial was continued to May 23, 2016. This trial date was confirmed on April 14, 2016. On April 27, 2016, Wright filed a motion to be relieved as defendant's counsel, complaining of defendant's insistence on pursuing matters irrelevant to his defense as well as defendant's inability to fund the defense. The trial court granted this request, vacated the trial date, and appointed the public defender.

At the People's request, on August 11, 2016, defendant's jury trial was set for December 5, 2016. In October 2016, the public defender, then assigned, (Monique Boldin) moved to continue the jury trial, arguing more time was needed to prepare an adequate defense due to problems obtaining materials from previous counsel and the need to continue the ongoing defense investigation. This motion was granted, and the jury trial was continued to January 23, 2017.  On December 13, 2016, Boldin moved a second time to continue the trial, arguing that investigation was still ongoing and that more time was needed to complete that investigation. Boldin requested the trial be set for March 17, 2017. The court granted the motion and reset the trial for March 6, 2017.

On February 28, 2017, Boldin filed a third motion to continue the trial due to problems associated with timely obtaining discovery from subpoenas requesting information essential to the defense. Counsel estimated another four weeks was needed. It appears this request was granted because as of March 2, 2017, defendant's trial was set for April 17, 2017. Thereafter, on March 29, 2017, Boldin filed a fourth motion to continue the trial due to Boldin's acceptance of employment with a different law office. Boldin's last day would be April 7, 2017, and the new public defender would need time to adequately prepare for trial. The new public defender assigned, Ernest Minner, supplemented the motion to continue the trial, arguing preexisting personal commitments and that he would need at least eight weeks to prepare for trial in the case. Over the prosecution's objection, the trial court continued the trial to June 5, 2017.

On May 9, 2017, Minner filed another motion to continue the trial, arguing discovery efforts, including interviewing witnesses and obtaining documents from subpoenas, were still outstanding, and the complexity of the issues and amount of prosecution discovery and witnesses necessitated additional time to prepare. The court granted the motion to continue and reset the trial for August 21, 2017.

On June 1, 2017, defendant appeared with newly retained private counsel, Julia Young, and the public defender was relieved. On July 25, 2017, Young filed her first motion to continue the trial, arguing she was not ready to proceed because of the serious nature of the charges, the large

amount of discovery, some of which was still outstanding, and her intention to retain two experts to testify at trial. Young also intended to file a Penal Code [footnote omitted] section 995 motion to dismiss. [footnote omitted] The court granted the motion, resetting the trial for October 10, 2017.

On September 25, 2017, Young filed her second motion to continue the trial, arguing a review of discovery disclosed that additional documents needed to be subpoenaed, that the defense had retained an investigator who had to be used wisely given fiscal constraints, and that the defense was still in the process of finalizing expert reports. Young's declaration also faulted the efforts of previous counsel, alleging that a lot of the investigation then being conducted should have been done years before and was complicated by the passage of time. The court granted Young's request with the proviso that the court would monitor the progress of the preparation for trial that was reset for April 9, 2018.

On February 28, 2018, defendant retained Paul Comiskey to assist Young, who would remain his lead defense counsel. In accordance with the March 6, 2018, pretrial orders, the collective defense filed defendant's motion in limine on March 23, 2018. Thereafter, on March 26, 2018, Young filed her third motion to continue the trial premised upon her and Comiskey's concern about defendant's competency to stand trial. Notably, Young's concern was founded in defendant's insistence on investigation he stated was essential to his defense, but which had not led to any helpful information. On March 29, 2018, the court ordered an Evidence Code section 1017 evaluation to be completed by April 6, 2018, and confirmed the jury trial would start April 10, 2018. [footnote omitted] The court further entertained and denied defendant's motion to relieve his current private attorneys, noting his right to counsel of his choosing was not absolute, that he was well represented, and the start of trial for the matter, which had been around for years, would begin as scheduled.

On April 9, 2018, Comiskey filed a motion to continue the trial arguing: (1) the defense case was not ready for trial owing to deficiencies in defense preparation; (2) defendant intended to dismiss his lead counsel (Young); and (3) Comiskey was not prepared to proceed as lead counsel. On April 10, 2018, the prosecution opposed this request arguing good cause had not been shown, including that the evidence sought to be investigated had been available to the defense since 2014, that there was still time to subpoena certain identified witnesses, and that further delay would not facilitate the resolution of other issues which would naturally resolve themselves during the trial process. Also on April 10, Young filed an ex parte motion under seal requesting to be relieved as counsel.

The court initially denied Young's request to be relieved, indicating that trial was starting the next morning and trial would be held every weekday if needed to finish the trial in time before Young's unavailability starting April 27. The court then recited at length the procedural history of the case, starting with the filing of the complaint in December 2014 and continuing to present. In light of the lengthy history of the case, multiple continuances, the prosecution's objections, that the motion was brought on the eve of trial raising issues that had never been raised before, and being mindful of the delay that the victim had already endured, the court denied the request to continue.

> Following a lengthy discussion regarding jury selection and other trial-related issues, Comiskey informed the court that he would withdraw his objection to Young's withdrawal if he could have two weeks to prepare for the trial. The court then questioned defendant, making sure he was aware that if defendant withdrew his objection, the court would likely release Young, but that trial had started and would not be continued, although the court might trail it. If defendant decided he did not like Comiskey during trial, he would have to represent himself. Defendant conferred with Comiskey and agreed to proceed on those terms, and Young was relieved. The court determined that jury selection would start the next day at 1:30 p.m., but that case presentation would trail until the next week to give Comiskey time to prepare.
>
> The parties reconvened on April 11, and the prosecution explained defendant's maximum sentencing exposure of 29 years to life if convicted on all counts and all enhancements were found true. The prosecution then recited the history of prior unsuccessful offers and defendant's offers to settle for eight years, 11 years, and then 14 years, which were all rejected given the stage of the case, defendant's exposure, and the victim's injuries. The prosecution said it would consider an offer that began somewhere in the 20's. Comiskey implored the prosecution to consider defendant's age and life expectancy, as well as the benefit of not having to take testimony from the victim. The court recessed to allow the parties to continue plea negotiations.
>
> Thereafter, the parties came back with a tentative agreement of 20 years, but the prosecution voiced the need to discuss defendant's offer with the victim, necessitating another break wherein defendant could also consider the plea form. Following the break, the prosecution reported that the victim consented to the proposed plea deal. The parties broke again to finish completing the plea form and other paperwork. Thereafter, the court discussed the consequences of the plea with defendant at length before conditionally accepting his plea and finding it knowing and voluntary.

In a footnote, the state court added: "Included within this discussion was the advisement that while the court retained authority to consider whether to accept the terms of this agreement pending consideration of the probation report, defendant would not be entitled to withdraw from the plea if he changed his mind." The state court continued as follows:

> In exchange for the dismissal of the remaining charges, defendant pled no contest to corporal injury on a spouse and assault with a deadly weapon. He also admitted the allegation that he inflicted great bodily injury under circumstances of domestic violence, and he had a previous serious felony conviction and a prior strike. The trial court denied defendant's request to withdraw his plea, which he argued was entered under duress because of the trial court's refusal to continue the trial date. In so doing, the court summarized the denial of defendant's latest motion to continue the trial, that the plea was a result of an offer by defendant, and found defendant was continuing to engage in gamesmanship.

///

> The court then sentenced him to an aggregate term of 20 years. Defendant was given credit for 1,258 actual days and 189 days conduct credit for a total of 1,447 days. The court imposed $350 in presentence investigation costs, two $40 court operations assessments, two $30 criminal conviction assessments, a $553 booking fee, a $172 incarceration fee, an $8,000 restitution fine, and a matching $8,000 suspended parole revocation fine. The court also issued a 10-year protective order to the victim. After defendant withdrew his objection to the proposed victim restitution, the court ordered $12,570.28 in restitution to the California Victims Compensation Board.
>
> Defendant timely appealed and was granted a certificate of probable cause.

ECF No. 16-13, Pgs. 2-6.

### B. Procedural History

Petitioner lays out the procedural history for the case in his petition. See ECF No. 1. On April 11, 2018, Petitioner pled no contest to corporal injury on a spouse and assault with a deadly weapon. Petitioner also admitted the allegation that he inflicted great bodily injury under circumstances of domestic violence, and he had a previous serious felony conviction and a prior strike. See id. The trial court sentenced Petitioner to an aggregate term of 20 years in state prison. See id. at 21. Petitioner appealed to the California Court of Appeal. See id. at 22. The Court of Appeal affirmed the conviction and sentence. See id.; see also ECF No. 16-13. The California Supreme Court denied review. See id. Petitioner also filed post-conviction actions in the Placer County Superior Court, the California Court of Appeal, and the California Supreme Court, all of which were denied. See ECF No. 16-16, 16-17, 16-18.

## II. DISCUSSION

Petitioner argues that he is entitled to a reversal of his convictions and a new trial on the following grounds: (1) the trial court erred in denying Petitioner's motion to continue; (2) petitioner's plea was made under duress; (3) the trial court erred by denying Petitioner's request to withdraw his plea; (4) ineffective assistance of attorney Julia Young, Esq.; (5) ineffective assistance of attorney Paul Comiskey, Esq.; (6) coercion of Petitioner's plea in violation of the Fifth Amendment; and (7) ineffective assistance of appellate counsel. These claims are consistent with the claims raised in the state court. For the reasons discussed below, the Court finds

Petitioner's arguments unconvincing and recommends that his petition be denied.

At the outset, the Court notes that Petitioner's conviction and sentence arose from a plea agreement. A guilty plea which is knowingly, intelligently, and voluntarily made, bars any right to later assert claims based on constitutional deprivations allegedly occurring prior to the guilty plea. See Lefkowitz v. Newsome, 420 U.S. 283, 288 (1975) (citing Brady v. United States, 397 U.S. 742 (1970); McMann v. Richardson, 397 U.S. 759 (1970); and Parker v. North Carolina, 397 U.S. 790 (1970)). Thus, where the defendant pleads guilty, he may only challenge whether the guilty plea was valid (i.e., knowing, intelligent, and voluntary). See Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also Mitchell v. Superior Court for Santa Clara County, 632 F.2d 767, 769-70 (9th Cir. 1980). This rule is known as the "Tollett rule."

An exception to this rule may exist where state law permits a challenge to an adverse pre-trial ruling despite a later guilty plea. See Lefkowitz, 420 U.S. at 288 (citing McMann, 397 U.S. at 766). This is called the "Lefkowitz exception." The only Lefkowitz exception under California law is a statute permitting an appeal based on an alleged Fourth Amendment violation. See id. at 771; see also Cal. Penal Code § 1538.5. A conditional guilty plea does not fall under the Lefkowitz exception. See Mitchell, 632 F.2d at 773. Another exception to the Tollett rule exists where the challenge goes to "the power of the state to bring the defendant into court to answer the charges brought against him." Journigan v. Duffy, 552 F.2d 283 (9th Cir. 1977) (citing Blackledge v. Perry, 417 U.S. 21, 30 (1974)). This is known as the "Journigan exception."

Thus, under the Tollett rule, a defendant who pleaded guilty may only raise claims on federal habeas which challenge the validity of the plea or fall within either the Lefkowitz or Journigan exceptions. Claims of ineffective assistance of counsel with respect to the plea are permitted under the Tollett rule. See Tollett, 411 U.S. at 267 (citing McMann, 397 U.S. at 771). Against this backdrop, the Court considers each of Petitioner's claims below.

///

///

///

**A.     Whether The Trial Court Erred in Denying Petitioner's Motion to Continue**

In his federal petition, Petitioner claims the trial court erred in denying his continuance at the eve of trial because by denying Petitioner's continuance the trial court forced Petitioner to face trial with unprepared counsel. In addressing this claim, the California Court of Appeal held:

> "A continuance in a criminal trial may only be granted for good cause. (§ 1050, subd. (e).) 'The trial court's denial of a motion for continuance is reviewed for abuse of discretion.' [Citation.] 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' (*Ungar v. Sarafite* (1964) 376 U.S. 575, 589 [11 L.Ed.2d 921, 84 S.Ct. 841]; [citation.].)" (*People v. Mungia* (2008) 44 Cal.4th 1101, 1118.) "A continuance may be denied if the accused is 'unjustifiably dilatory' in obtaining counsel, or 'if he arbitrarily chooses to substitute counsel at the time of trial.'" (*People v. Courts* (1985) 37 Cal.3d 784, 790-791.)
>
> Here, we discern no abuse in the trial court's refusal to grant defendant a tenth continuance of the trial date in this matter. (*People v. Mungia, supra*, 44 Cal.4th at p. 1118.) Defendant had previously received numerous continuances of his trial date, premised upon his multiple replacements of counsel, as well as what appears to be changes in defense strategy and associated discovery requests from those counsel. When defendant retained Comiskey to assist in his defense less than two months before trial, the court was clear that no further continuances of the trial date would be granted. Nonetheless, defendant stopped cooperating with Young and attempted to relieve both Young and Comiskey after they expressed concerns regarding defendant's competency. The court refused this request.
>
> Thereafter, Comiskey filed a request to continue the trial date, asserting inadequate defense preparation and defendant's conflict with Young. Young also filed a request to withdraw as counsel due to a deterioration of her relationship with defendant, as well as an upcoming, undisclosed medical need. The trial court denied Young's request, noting the trial would be completed in time to accommodate Young's medical needs. It then recounted the lengthy history of the case, and denied the motion to continue in light of that history, including multiple continuances, the prosecution's objections, that the motion was brought on the eve of trial raising issues that had never been raised before, and being mindful of the delay that the victim had already endured. This was within the court's discretion. (*People v. Mungia, supra*, 44 Cal.4th at p. 1118.)
>
> ECF No. 16-13, pgs. 6-7.

/ / /

/ / /

10

Respondent argues the trial judge's refusal to grant Petitioner's motion to continue was reasonable. See ECF No. 17, pg. 7. Respondent contends that because Petitioner's custody arises out of his plea, Petitioner cannot claim the trial judge's refusal to grant Petitioner's motion to continue renders his custody illegal. See id. Respondent asserts that, if Petitioner was concerned about counsel's preparation, Petitioner could have made a record of his concerns during trial and challenged his conviction on those grounds. See id. According to Respondent, because Petitioner pleaded guilty, Petitioner cannot argue his custody arises out of the trial court's refusal to grant his continuance. See id.

The Court agrees with Respondent. This claim does not relate to either the validity of the plea agreement or the effectiveness of counsel's assistance. Nor does the claim fall within any recognized exception to the Tollett rule. Thus, the claim is foreclosed on federal habeas review.

Even if the claim is not foreclosed, the Court finds that the state court's review of the denial of Petitioner's motion to continue was neither contrary to nor based on an unreasonable application of clearly established federal law. "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." Ungar v. Sarafite, 376 U.S. 575 (1964) (citing Avery v. Alabama, 308 U.S. 444, (1940)) "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id. (citing Nilva v. United States, 352 U.S. 385 (1957))

Here, the state appellate court weighed the circumstances and reasonably determined the trial court did denial of Petitioner's motion to continue was within the court's discretion. The state court noted that for nearly two years Petitioner's case had been delayed due to multiple replacements of counsel and discovery requests. The trial court granted many of Petitioner's requests to delay his trial. Approximately two months before trial, while Mr. Comiskey was retained, the court made explicit that no further continuances would be granted.

11

At the eve of trial, Comiskey filed Petitioner's final request to continue to give Comiskey more time to prepare for trial. The trial court denied the motion because of concerns surrounding further delay. However, in order to give Petitioner and Comiskey more time to prepare, the trial court trailed the trial a week after jury selection. The state court determined the trial court's denial of Petitioner's motion to continue did not violate Petitioner's due process rights and was within the trial court's discretion.

Given the circumstances of this case, the reasons presented to the trial judge, and the trial judge's responses, this Court cannot say that the trial court abused its discretion in denying Petitioner's last request for a continuance on the eve of trial. The state court's determination of this claim, even if not foreclosed on federal habeas review, was thus neither contrary to nor based on an unreasonable application of clearly established law which leaves the decision to deny a continuance squarely within the trial court's discretion.

**B.   Whether Petitioner Entered His Plea Under Duress, Whether the Trial Court Erred in Denying Petitioner's Request to Withdraw the Plea, and Whether Petitioner's Fifth Amendment Rights Against Self-Incrimination Was Violated**

In his federal petition, Petitioner raises three claims related to his plea. First, Petitioner argues that his plea was unconstitutional because the trial court created such a coercive atmosphere that Petitioner entered his plea under duress. See ECF No. 1. Second, Petitioner asserts that the trial court erred in denying his request to withdraw the plea. See id. Third, Petitioner contends that the coercive plea violated his Fifth Amendment right against self-incrimination. See id. In addressing these three related claims, the California Court of Appeal held as follows on direct appeal:

> Here, the trial court rejected defendant's contention the plea was entered into under duress because of the trial court's refusal to continue the trial date. First, the trial court affirmed its decision to deny defendant's motion to continue; second, it noted that the plea was actually a result of defendant's own offer to settle; and third, given consideration of these circumstances, the court determined that defendant was continuing to engage in gamesmanship in an attempt to avoid trial.

/ / /

/ / /

> We find these factual findings supported by substantial evidence (*People v. Fairbank, supra,* 16 Cal.4th at p. 1254), and the court's decision was within its discretion (*People v. Cruz, supra*, 12 Cal.3d at p. 566). As noted, the trial court did not err in denying defendant's request for a tenth continuance. Further, the trial court released Young only after Comiskey suggested that Young could be allowed to withdraw if he was given a few weeks to prepare for trial. Defendant voluntarily agreed to this, and Young was released. Defendant did this fully knowing that the trial had already started and that Comiskey had limited knowledge of the case, having been retained less than two months before to assist Young as her second counsel. Moreover, while not continuing the trial that was in progress, the court did assist defendant and Comiskey by providing that jury selection would begin the next day, but opening statements would be trailed until the next week so that Comiskey could have extra time to prepare.
>
> Further, prior to the selection of the jury, the prosecution accepted defendant's offer to settle the matter for 20 years in state prison. There was a series of breaks pending the finalization of this deal, and thereafter, the trial court extensively discussed the settlement with defendant, prior to finding that defendant entered the plea agreement knowingly and voluntarily. Accordingly, defendant has not shown he was under duress by clear and convincing evidence. (People v. Cruz, supra, 12 Cal.3d at p. 566.) To the contrary, substantial evidence supports the trial court's determination that defendant was engaged in gamesmanship intended to extend his trial as long as possible.

ECF No. 16-13, pgs. 7-8.

To the extent Petitioner asserts he was coerced into entering his plea, Petitioner's claim is unpersuasive. Notably, as the state court indicated, Petitioner himself offered the plea agreement. Contrary to Petitioner's assertion, the trial court did not coerce a plea by improperly denying a continuance. Thus, the plea was entered into knowingly, intelligently, and voluntarily. The Court finds that the state court's rejection of this claim was neither contrary to nor based on an unreasonable application of clearly established federal law.

To the extent Petitioner asserts fault with the trial court's refusal of defendant's request to withdraw his plea, Petitioner's claim is unpersuasive. The California Court of Appeal determined that the trial court had substantial evidence to support its decision and that the trial court had the discretion to deny Petitioner's request to withdraw his plea. On review, the California Court of Appeal applied Pen. Code, § 2018, which states that "A guilty plea may be withdrawn at any time before judgment for good cause shown." California's good cause factor for withdrawal of a plea is not contrary to clearly established federal law. See Blackledge v. Allison, 431 U.S. 63 (1977). The trial court denied Petitioner's request to withdraw his plea because it

found Petitioner's request was not based on good cause but rather a desire to avoid trial and participate in gamesmanship. On this record, the Court finds that the state court's rejection of this claim was neither contrary to nor based on an unreasonable application of clearly established federal law.

Because the trial court did not coerce the plea, and because the trial court did not err in rejecting Petitioner's request to withdraw the plea, there is no merit to Petitioner's related claim that the coerced plea resulted in violation of Petitioner's Fifth Amendment right against self-incrimination.

### C. Whether Petitioner Received Ineffective Assistance of Counsel

Petitioner raises claims of ineffective assistance of counsel as to Ms. Young, Mr. Comiskey, and appellate counsel. See ECF No. 1. The last reasoned state court decision to address these claims is the Placer County Superior Court's decision denying Petitioner's state post-conviction action. See ECF No. 16-16.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id. In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

/ / /

/ / /

/ / /

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

The Strickland standards also apply to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.") Further, there is, of course, no obligation to raise meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88. Thus, counsel is not deficient for failing to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. See id. at n.9.

/ / /
/ / /
/ / /
/ / /

1.   Ms. Young

Petitioner argues his attorney, Ms. Julia Young, was ineffective due to her alleged failure to investigate and prepare for trial. See ECF No. 1. In addressing this claim on post-conviction review, the Placer County Superior Court applied the Strickland standard outlined above and held as follows:

> Petitioner argues that this attorney Ms. Julia Young, was ineffective due to her alleged failure to investigate and prepare for trial. However, he fails to identify specific failures in her investigation and how that prejudiced him. Moreover, his claim should be viewed in the context of the findings contained in the Court of Appeal's Decision. When Ms. Young filed her third motion to continue the trial on March 26, 2018; it was due to her and her colleague's concern about the defendant's competency to stand trial. Ms. Young's concern was "founded in defendant's insistence on investigation he stated was essential to his defense, but which had not led to any helpful information." (Decision, p.5.)
> Subsequent to April 9, 2018, when Mr. Comiskey filed a motion to continue the trial, the issue of defense preparedness was litigated. The trial court's denial of the continuance, and allowance of Ms. Young to be relieved of counsel (which the defendant expressly agreed to) was reviewed and upheld on appeal. (Decision, pp. 8-9.) Under these circumstances and based upon the conclusory nature of his pleadings, petitioner has failed establish an adequate showing that she was ineffective or that he suffered prejudice. His claim that his defense at trial would somehow be hamstrung due to the prosecution in limine motion regarding on reciprocal discovery is pure speculation.

ECF No. 16-16, pgs. 4-5.

Because the state court applied the clearly established Strickland standard, this Court reviews to determine whether it did so unreasonably in rejecting Petitioner's claim of ineffective assistance of counsel. This Court finds that it did not. The state court found Petitioner's claim that Young provided ineffective assistance of counsel to be speculative. Moreover, as the state court noted, Petitioner agreed to the withdrawal of Ms. Young. The record also reflects that Ms. Young was diligent in seeking appropriate continuances. From these facts, the state court reasonably found Petitioner had failed to show Ms. Young was ineffective or that he suffered prejudice.

///

///

///

    2. <u>Mr. Comiskey</u>

  Petitioner claims Mr. Paul Comiskey provided ineffective assistance when he advised Petitioner to plead guilty without providing Petitioner any factual information or legal assessment of Petitioner's case. <u>See</u> ECF No. 1. The Placer County Superior Court addressed this claim as follows:

> Petitioner claims Mr. Paul Comiskey, Esq, was ineffective in his representation of the petitioner due to his giving advice to plead guilty without any factual information or legal assessment of whether he should do so. In addressing this claim, the court first considers the Court of Appeal's description of the circumstances of the plea in their upholding the trial court's denial of his motion to withdraw his plea:
>
>> "[p]rior to the selection of the jury, the prosecution accepted defendant's offer to settle the matter for 20 years in state prison. There was a series of breaks pending finalization of this deal, and thereafter, the trial court extensively discussed settlement with defendant, prior to finding that defendant entered the plea agreement knowing and voluntarily. Accordingly, defendant has not shown he was under duress by clear and convincing evidence [citation omitted.] To the contrary, substantial evidence supports the trial court's determination that defendant was engaged in gamesmanship intended to extend this trial as long as possible." (Decision, p. 10.)
>
> Petitioner's current allegations toward Mr. Comiskey are wholly speculative and conclusory. In reviewing Mr. Comiskey's motion to continue, he indicated that he had at the time "read the file and [had] spent twelve to twenty hours in meetings with James Wroe and Julie Young and Investigator Larry Demates." (Motion to Continue Trial, filed April 9, 2018, p.2.) Nothing in his declaration suggests he did not have sufficient facts upon which the advise the defendant of his plea on April 11, 2018.
> Mr. Comiskey affirmed that he [sic] sufficient time to discuss the case with his client, including the elements of the crime, and his rights and defenses. (Advisement and Waiver of Rights Form, dated April 11, 2018.) The Defendant also affirmed he had enough time to talk with his attorney and that his defenses were explained to him. (<u>See</u> Advisements and Waiver of Rights Form, dated April 11, 2018; <u>see also</u> Reporter's Transcript of Change of Plea, dated April 11, 2018, p.12.)

ECF No. 16-16, pgs. 5-7.

  The state court applied the <u>Strickland</u> standard and this Court reviews to determine whether it did so unreasonably. As with Ms. Young, the state court's rejection of Petitioner's ineffective assistance of counsel claim as to Mr. Comiskey was reasonable. As the state court noted, Mr. Comiskey spent considerable time with Petitioner, his former counsel Ms. Young, and

the investigator. There is nothing in the record to support Petitioner's speculative assertion that Mr. Comiskey did not have enough time to properly advise Petitioner and, in fact, Petitioner concedes that he was advised prior to entering into the plea agreement. Because Petitioner fails to establish the first Strickland prong that Mr. Comiskey's representation was deficient, the Court need not reach the question of prejudice.

### 3. Appellate Counsel

Petitioner argues that his appellate counsel was also ineffective. See ECF No. 1. In addressing this claim, the state court held:

> Petitioner asserts that "[i]f the court finds a Fifth, Sixth, or Fourteenth Amendment violation, or corresponding violation of the California Constitution, then appellate counsel's failure to raise the issue on appeal would constitute ineffective assistance of appellate counsel (Petition, p. 38.) Due to this court's rejection of petitioner's aforementioned claims, his claim of IAC of appellate counsel similarly fails.
> This court also is mindful that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." (Robbins at 288 (citing Jones v. Barnes (1983) 463 U.S. 745).) The High Court instructed that while it is "still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate counsel was incompetent." (Ibid.)(See, e.g., Gray v. Greer, 800 F.2d 644, 646 (C.A.7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

ECF No. 16-13, pgs. 7-8.

Petitioner's claim is premised on a favorable finding as to his claims of trial court error. As discussed above, and as noted by the state court, none of Petitioner's substantive claims has merit. Therefore, appellate counsel's failure to raise these claims on appeal was not deficient. Again, because the Court finds no support for Petitioner's claim that appellate counsel's representation was deficient, there is no need to address the prejudice prong of the Strickland test.

/ / /

/ / /

/ / /

/ / /

/ / /

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 21, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE